Mr. Chief Justice Shaekey
delivered the opinion of the court.
Marsh & Pendleton sued out an attachment against C. F. McRea, which was levied on eleven bales of cotton. The plaintiffs in error interposed their claim to the cotton under the following circumstances. McRea, of the parish of Concordia, Louisiana, was, on the 17th of March, 1846, indebted to Bonner & Co., of New Orleans, in the sum of $447, for cash advances. On the 14th of April, 1846, the cotton was shipped by McRea through his agent, at Rifle Point, in said parish, on the steamboat Paul Jones, to Bonner & Co.; a bill of lading was taken and forwarded by the boat. The cotton was attached at Natchez, where the boat touched on her downward passage. The cotton was shipped to Bonner & Co. to sell, and out of the *380 proceeds their account was to be paid, and also any other account or note that McRea might owe them, or any bill he might draw against it.
.The claimants’ right has been discussed, as though it could only be defeated on the doctrine of the right of stoppage in tran-situ, which, it is said, was peculiar to the vendor. This doctrine is not involved. It is an equitable right which the vendor has, who has sold a chattel on a credit, to be exercised in case of the insolvency of the vendee before delivery. It presupposes an absolute sale, by which the right of property is vested in the vendee. If this were a case in which McRea had nothing more than the right of stoppage in transitu, the claimants must succeed, because that is to admit their title to the thing, subject to McRea’s equitable lien for the price.
But the true and only question here is the question of title; was it the property of McRea when the attachment was levied, or of Bonner & Co. ? In other words, had there been a sale and delivery ? It is not pretended that there was any contract for the cotton, other than that which the law may imply from the circumstances. The question of ownership seems to lie in a narrow compass. It is determined by the true answer to a single interrogatory. Was the debt of McRea to Bonner & Co. paid by the shipment of the cotton?
The delivery of the bill of lading on board of the boat for Bonner & Co. is relied on as sufficient to pass title. In connection with an actual sale, a symbolical delivery is sufficient. The sale of goods at sea may be made by a transfer of the bill of lading by the factor; but in such cases it is assigned for the purpose of passing title.
In cases like the present, it is necessary to bear in mind the origin of the transaction, as by that the rights of parties must be determined. There must be a contract of purchase, either direct or by necessary inference; or if not, the owner’s title is not divested. There are cases in which, for a preexisting debt, the consignee will be allowed to retain in preference to other creditors, when the thing consigned has come into actual possession.
*381 The delivery of goods, says Chancellor Kent, to a servant or agent of the purchaser, or to a carrier or master of a vessel, when they are to be sent by a carrier, or by water, is equivalent to a delivery to the purchaser; and the property with the correspondent risk, immediately vests in the purchaser, subject to the vendor’s right of stoppage in transitu. 2 Kent, 499. This doctrine does not apply in all cases where goods are shipped by one man to another. It is rather a question of delivery, which consummates a previous purchase. The remarks are made in view of a preceding contract.
Again he says, “ the effect of a consignment of goods by bill of lading, is to vest the property in the consignee. A delivery to any general carrier, where there are no specific directions out of the ordinary usage, is constructive delivery to the vendee.” These remarks evidently presuppose a previous contract. This is manifest from the remarks which follow. “ But if there be no particular mode of carriage specified, and no particular course of dealing between the parties, the property and the risk remain with the vendor while in the hands of the common carrier. The delivery to the agent must be so perfect as to create a responsibility on the part of the agent to the buyer.” “ Until the party receiving a consignment or remittance, made on account of the consignor, has done some act recognizing the appropriation of it to a particular specified purpose, and the party claiming under the appropriation has signified his acceptance of it, so as to create a privity, the property and its proceeds remain at the'risk and on the account of the remitter or owner.”
This seems to be a correct summary of the principles established by adjudged cases; but this further principle is to be kept in view; there is a difference between the right to the thing, and the right to the proceeds when goods are consigned by one to another. In the latter case there is no change of property.
The books are full of cases on this subject, and, as the question is said to be important, it demands a critical examination on authorities cited. Caldwell v. Ball, 1 Term R. 205, 206, is *382 a leading case. The controversy arose on two bills of lading for the same goods. One had been assigned by the agent of the shipper to the plaintiff. The shipper, or consignor had assigned the other. It was admitted that other assignment would pass title; but it is to be observed that the assignments were made for that purpose. The sugar was on ship-board, and could not be otherwise transferred. The title derived by the assignment of the owner was preferred, and, if it proves anything which has a bearing on the question, it is, that the owner’s right is not divested by the act of shipping to another.
The case of Wright & Rathbone v. Campbell & Hays 4 Burr. 2046, establishes the principle, that a factor to sell goods, who has secured an assignment of the bill of lading, may make a valid sale while the goods are at sea. This cannot be doubted. He acts but as agent for the principal, and to recognize his right to do so, is to recognize the same right in the principal. That Bonner & Co., as factors, could have sold this cotton before its arrival, is true; but that does not prove that the right of property was in them.
The case of Hibbert v. Carter, 1 Term R. 746, establishes the principle, that the transfer of a bill of lading to a creditor, prima facie conveys the whole property in the goods from the time of its delivery; but it also décides, that if the parties only intended to bind the proceeds, the right of property in the thing is not .divested. And it was also said, in this case, that the transfer of the bill of lading will operate as a payment pro tanto. It cannot be pretended, that this mere shipment of cotton was a payment.
In Stevenson v. Pemberton, 1 Dallas, 3, it was decided, that when goods had been shipped to a consignee to pay a previous debt, and had actually come into his possession, he would be entitled to the proceeds in discharge of his debt. That is like the present case, except in regard to possession, and that constitutes a very material difference.
Lickbarrow v. Mason, 2 Term R. 63, is also a leading case. But it differs very widely from this case. F. had ordered goods to be shipped on his account by T., which was done, and *383 four bills of lading taken, which made the goods deliverable to the shipper or order. Two of the bills were assigned and forwarded to F., with an invoice of the goods, and bills of exchange for the amount drawn by T., which were accepted. F. sent the bills of lading and invoice to the plaintiff, and also drew bills, which the plaintiff paid. Before the first bills drawn by T. on F. became due, F. became a bankrupt, and T. was obliged to take up the bills, and, thereupon, indorsed the bill of lading to defendant, who presented it to the captain and received the goods. On demurrer to the evidence, the plaintiff was held to be entitled to recover. But the reason is plain enough. F. had ordered the goods; here was a contract, which was consummated by the assignment, and the receipt of the bill of lading. F. then had a right to dispose of the goods, which he did do to the plaintiff, who was an innocent person. The goods were sold while at sea, by delivery of the bill of lading. The original consignor had parted with his title, not by a mere voluntary shipment, but by filling an order. And not only had he parted with title, but his right of stoppage in transitu was lost when the goods went into the hands of a third person. Buller, justice, in' delivering his opinion, stated, that as between vendor and vendee, the property is not altered until delivery of the goods.
The whole doctrine on this subject was very fully considered in Walter v. Ross, 2 Wash. C. C. R. 283, in which all the cases are reviewed. It bears a more exact resemblance to the case at bar, than any that has been found. Judge Washington said the cases in the books were of two classes. 1st. Where the goods were shipped by order of the consignee, and for his account and at his risk; or, 2d, without orders, and for account and at the risk of the shippers. The first class of cases is founded upon contracts of sale; and the second are all cases of principal and agent or factor. As to the latter class, it was said, if the factor has not sold the goods, it is impossible that any question can ever arise between him and his principal, respecting the right of the latter to reclaim the property at any time before a bona fide sale. “ The factor has no property or interest in the goods beyond his commissions, and of course cannot controvert the right *384 of his principal. If, indeed, he be a creditor of the shipper, he has a contingent interest in virtue of his right of lien, which the possession would give; but for the perfection of this right, he must acquire and retain an actual possession of this property; a constructive possession Avill not do.”
On these principles, the case is clearly against the claimants, They were not purchasers, but factors merely, who were creditors of the shipper. The cotton was shipped to them to sell to pay their account, and any other account, note or bill which might be drawn on the cotton. At most they had but a lien on the proceeds of the cotton after sale, to the amount of their account. A factor has a qualified right of property, but it is only such right as enables him to protect the interest of his principal. He has no right adverse to that of his principal. And whatever right they had, depended on actual possession, which they never acquired.
The manuscript case from the supreme court of Louisiana, was different in its circumstances. The produce had been placed on ship-board, the bilis of lading mailed, and bills drawn on the identical shipment. The case was placed on the ground of an actual sale, consummated by symbolical delivery. It was like the case of Lickbarrow v. Mason.
The doctrine is broadly laid down in Abbott on Shipping, (by Story and Perkins,) 410, and may seem to militate against the foregoing view; but the case of Haille v. Smith, 1 Bos. & Pul. 563, cited in support of the text, does not go so far. It is in strict accordance with what has been said. The case turned on a special contract to ship specific goods to one house for the benefit of another, and it was not only placed on the ground of the specific agreement, but it was held to have raised a trust for the benefit of the third house.
It is also said, in the authority last cited, that where goods are shipped to a factor, and bills of lading transmitted, making them deliverable to him, upon proof of the intention of the principal to vest the property in the factor, as a security for antecedent advances, the factor may acquire a special property in the goods the moment they are delivered. That is doubtless true. *385 But that is but a special property, and it is subservient to the absolute or paramount right of the principal, and it is, therefore, subject to the rights of attaching creditors before delivery.
Judgment affirmed.